**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Northern Division*

|  |  |
|---|---|
| **CUTTING EDGE TECHNOLOGIES, INC.,** | * |
| **Plaintiff,** | * |
| v. | *   Case No.: WDQ-01-2855 |
| **NOSYUIAIDO,** | * |
| **Defendant.** | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**REPORT AND RECOMMENDATION**

This Report and Recommendation addresses Claimant Bradley Anderson's Renewed Motion to Release Levied Property, ECF No. 66; and the Opposition thereto that Plaintiff Cutting Edge Technologies, Inc. ("Cutting Edge") filed, ECF No. 67, which incorporates by reference Cutting Edge's Response, ECF No. 58, to Mr. Anderson's Response in Opposition to Writ of Execution and Claim for Property ("Anderson Motion"), ECF No. 57. For the reasons stated below, the undersigned concludes that the Writ of Execution, ECF No. 56, was improperly sought and improvidently issued and Mr. Anderson's property should be returned to him. It is, therefore, recommended that the Court VACATE the Writ, and DENY AS MOOT Mr. Anderson's Renewed Motion.[1]

---

[1] Judge Quarles referred this case to me pursuant to 28 U.S.C. § 636 and Local Rule 301.6(aj) to "[o]rder[] and conduct[] supplementary proceedings in accordance with Md. R. Proc. 2-633," which governs discovery in aid of execution. ECF No. 59. Having reviewed the filings and the docket, I have concluded that the Writ of Execution was improvidently issued and further supplementary proceedings stemming from the Writ would be improper. Therefore, I am submitting this Report and Recommendation in lieu of conducting supplementary proceedings.

I.  **BACKGROUND**

More than a decade ago, the Court granted default judgment in favor of Cutting Edge after concluding that Defendant/Judgment Debtor Nosyuiaido breached its contract with Cutting Edge and "attempt[ed] to engage in unfair competition with Plaintiff." Mar. 15, 2002 Order, ECF No. 14; *see* Pl.'s Resp. Ex. 2 (Mar. 15, 2002 Order), ECF No. 58-3. The Court later amended its Default Judgment Order to include a monetary judgment in the amount of $1,545,338.40 in Cutting Edge's favor and against Judgment Debtor Nosyuiaido. Mar. 25, 2002 Order, ECF No. 18; *see* Pl.'s Resp. Ex. 3 (Mar. 25, 2002 Order), ECF No. 58-4.

On July 7, 2011, in an attempt to collect on its ten-year-old judgment, Cutting Edge filed an *ex parte* Request for Writ of Execution with this Court. ECF No. 54. In its request, Cutting Edge explained that, while Defendant/Judgment Debtor is located in Japan, Japanese martial arts equipment that belongs to Defendant/Judgment Debtor (the "Property") was "expected to be on display at a private event taking place at Concordia College, 901 8th Street South, Moorehead [*sic*], Minnesota 56562 (the 'Premises')" in late July 2011. Pl.'s Request for Writ 1. Plaintiff requested that the United States Marshal "levy upon the Property and remove it from the Premises for sale." *Id.* The Clerk of the United States District Court for the District of Maryland issued the Writ of Execution on July 12, 2011, and the United States Marshal's Office in Baltimore received it the same day. Writ 1. The United States Marshal[2] seized the Property from Mr. Anderson on July 31, 2011 at Concordia College in Moorhead, Minnesota, and provided Mr. Anderson with a copy of the Writ of Execution. Anderson Mot. 1; Pl.'s Resp. Ex. A (Polland Aff. ¶ 16), ECF No. 58-1.

---

[2] It is unclear whether the deputy United States marshals who seized the property were from the United States Marshal's Office in Maryland or Minnesota.

Mr. Anderson filed a motion opposing the seizure, insisting that the Property was not Defendant/Judgment Debtor's property and therefore not properly subject to seizure.[3] Anderson Mot. 1–2. On those grounds, Mr. Anderson asked the Court to remove the Property from the levy and return it to him. *Id.* at 2. Plaintiff opposed Mr. Anderson's motion and requested discovery in aid of execution. Pl.'s Resp. ¶¶ 24–25. The Court granted Plaintiff's request to seek discovery in aid of enforcement of its monetary judgment and denied Mr. Anderson's motion without prejudice to renewal after Plaintiff had the opportunity to conduct discovery in aid of execution. Oct. 26, 2011 Mem. Op. & Order 5, ECF No. 62. That discovery now has concluded. *See* March 20, 2012 Ltr. Order, ECF No. 72.

On February 7, 2012, Mr. Anderson filed his Renewed Motion to Release Levied Property, and thereafter Plaintiff filed an Opposition. As before, Plaintiff and Mr. Anderson disagree about the rightful ownership of the Property. *See* Anderson Renewed Mot. 1–3; Pl.'s Opp'n 1; Oct. 26, 2011 Mem. Op. & Order 2–3. Mr. Anderson argues that he purchased the Property outright, and that in any event, he acquired it, not from Defendant/Judgment Debtor, but from a different Japanese company, Nosyudo Yugen Kasiha ("Nosyudo"). Anderson Renewed Mot. 1–3. Cutting Edge insists that the Property was on consignment from Nosyudo or Defendant/Judgment Debtor Nosyuiaido, which are not legally distinct companies. Pl.'s Opp'n 1; Pl.'s Resp. 1–7.

---

[3] Mr. Anderson also alleged that "the seizure itself was defective in its operation" because he did not receive a copy of the Writ of Execution until he "specifically requested it from the US Marshal." Anderson Mot. 2. However, Mr. Anderson does not pursue this argument in his Renewed Motion, *see* Anderson Renewed Mot. 1–4, and in any event, he did receive a copy of the Writ, *see* Anderson Mot. 2.

## II.  DISCUSSION

Mr. Anderson filed his Renewed Motion to Release Levied Property in response to the seizure of his martial arts equipment pursuant to the Writ of Execution, and his motion is "fundamentally a motion to quash the Writ." *See Transpacific Tire & Wheel, Inc. v. Orteck Int'l, Inc.*, No. DKC-06-187, 2010 WL 4296585, at *1 (D. Md. Oct. 29, 2010).  The circumstances are peculiar because the Writ, issued by this Court in Maryland, directed the United States Marshal to seize property located in Minnesota.  Thus, despite the fact that the parties themselves did not brief this issue, this Court preliminarily must determine whether the Writ was properly issued.

Writs of execution, a "subcategor[y] of writs of attachment," are a means of enforcing a money judgment by "direct[ing] the sheriff to levy upon property of a judgment debtor to satisfy [the] money judgment." *Geoghegan v. Grant*, No. DKC-10-1137, 2011 WL 673779, at *7 n.5 (D. Md. Feb. 17, 2011).  They are governed by state rules, unless a federal statute applies, which is not the case here.  *See* Fed. R. Civ. P. 69(a)(1) ("A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."). Typically, the rules of "the state in which enforcement of the judgment will be sought" govern procedure on execution.  Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, 12 *Fed. Prac. & Proc.* § 3012, at 146 (1997).  Notably, "[t]his need not be the state in which the judgment was originally entered, as federal judgments may by statute be registered in other districts." *Id.*  Yet, as noted, Plaintiff filed its Request for Writ of Execution in this Court, the United States District Court for the District of Maryland, even though the Property was located in Minnesota.  There is no indication that Plaintiff has registered the judgment in Minnesota.

4

Because this Court is located in Maryland and Plaintiff has sought enforcement in this Court, Maryland rules apply. *See* Fed. R. Civ. P. 69(a)(1).

In Maryland, the procedures for writs of execution appear in Md. Rules 2-641 – 2-644 and Md. Code Ann., Cts. & Jud. Proc. § 3-302, which governs attachments generally. Section 3-302 includes the "limitation[] . . . that the court must act within the limits of its jurisdiction," and, as "[n]o particular elaboration is provided as to what the limits of a court's jurisdiction are," this Court has concluded that "territorial limitations of the State are intended." *F.D.I.C. v. Rodenberg*, 622 F. Supp. 286, 287–88 (D. Md. 1985) (citing Md. Code Ann., Cts. & Jud. Proc. §§ 1-501 & 3-302). This is in keeping with the general rule that, "[u]nless authorized by statute, execution may not ordinarily go beyond the territorial jurisdiction of the particular court which rendered the judgment." CJS Executions § 78.

In this regard, *United States v. Morris*, 23 U.S. 246 (1825), is informative. There, a United States Marshal levied upon property in New York under a writ issued by the United States District Court for the District of Maine, and then returned the property to the judgment debtors "for want of buyers," rather than selling the property. *Id.* at 246–47. The United States, as judgment creditor, brought suit against the United States Marshal for returning the property, *id.* at 247, and the Supreme Court ruled in the Marshal's favor on other grounds, *id.* at 281. Yet, the Supreme Court addressed the propriety of the writ's issuance in *dicta* "[t]o guard . . . against an inference, not intended by the Court to be admitted, that the execution, in this case was properly issued from the District Court of Maine to the Marshal of New[] York." *Id.* It noted that "although the judgment is nominally in favour of the United States, yet it is substantially and beneficially for the use of the custom-house officers of Portland; and that the execution was issued solely and exclusively for their benefit, and not for the use of the United States." *Id.* at

281–82. Thus, the Court stated that "it has not, and certainly cannot be pretended, that an execution from the District Court of Maine could run into any other State," explaining that a writ of execution could issue properly from one state to a marshal in another state only if the judgment were "obtained for the use of the United States." *Id.* at 282.

Also, in *GM Gold & Diamonds LP v. Fabrege Co.*, 489 F. Supp. 2d 725 (S.D. Tex. 2007), the court said:

> Attachment orders are essentially actions *in rem*, as they result in actual or constructive control over the *res* itself, rather than simply adjudicating personal rights to the subject property. As such, attachment orders can reach only as far as a court can extend its *in rem* jurisdiction. Under traditional principles of jurisdiction, a court's *in rem* powers cannot extend beyond the state's borders, for "[t]he basis of the jurisdiction is the presence of the subject property within the territorial jurisdiction of the forum State." . . . In short, *attachment orders are proceedings whose jurisdiction extends no further than the territorial boundaries of the forum state*.

*Id.* at 727 (quoting *Hanson v. Denckla*, 357 U.S. 235, 246–47 (1958) (emphasis added) (emphasis in *GM Gold* omitted) (internal citations omitted); *accord* Fed. R. Civ. P. 4.1(a) (stating that process, such as for the enforcement of a judgment, "may be served anywhere within the territorial limits of the state where the district court is located and, if authorized by a federal statute, beyond those limits"). Simply put, a federal district court "may only issue a writ of attachment ordering the seizure of certain personal property if a . . . state court [in the state in which the federal court is located] could do the same." *GM Gold*, 489 F. Supp. 2d at 727 & n.1 (noting that "each court which has decided the extraterritoriality issue has refused to give effect to attachment writs aimed at a *res* outside the territorial boundaries of the forum state"; collecting cases). Thus, property outside the limits of the State of Maryland is not the proper subject of a writ of execution issued by the United States District Court for the District of Maryland. *See Rodenberg*, 622 F. Supp. 287–88.

As noted, the Property was located in Minnesota and therefore was not the proper subject of a writ of execution issued by this Court. *See id.* The logical approach for Plaintiff to have taken to enforce its money judgment would have been to register the judgment in Minnesota and seek a writ of execution in the United States District Court for the District of Minnesota, with Minnesota state rules governing the procedure on execution of the writ. Instead, Cutting Edge requested a writ of execution from the Clerk of this Court. Having received the filing, "[t]he clerk [of this Court] acts in a ministerial capacity and has no discretion to refuse issuance of the writ when confronted with an unconditional judgment, in ordinary form, and an application for the writ proceeding from a proper party." CJS Executions § 65. Indeed, "[w]here the record or the court shows a proper judgment or decree authorizing it, the clerk of court must, on application by the proper party, issue a writ of execution." *Id.* Here, Cutting Edge was a proper party, in whose favor the Court had entered a money judgment. *See* Mar. 25, 2002 Order. Therefore, the Clerk was required to issue the Writ as Cutting Edge requested. *See* CJS Executions § 65.

This Court cannot enforce the judgment because the Property is located outside the State of Maryland. *See Rodenberg*, 622 F. Supp. 287–88; *see also Morris*, 23 U.S. at 281–82; *accord* Fed. R. Civ. P. 4.1(a). The Writ of Execution could not reach the Property, and therefore it is recommended that the Writ of Execution be VACATED as improvidently issued. *See* Fed. R. Civ. P. 60(a) ("The court may correct . . . a mistake arising from oversight . . . whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice."); *Autotech Techs. LP v. Integral Research & Dev. Corp.*, 499 F.3d 737, 751 (7th Cir. 2007) (vacating writ of execution where plaintiff failed to follow proper procedure to levy against assets outside the United States (i.e., by "obtain[ing] recognition and

7

enforcement of the U.S. judgments in the courts of [the foreign] country" so that "those courts [could] use their powers to assure enforcement of the judgment"), and as a result, "there was nothing that the writ of execution could validly reach").  The Property, consequently, should be returned to Mr. Anderson.  It is also recommended that Mr. Anderson's Renewed Motion be DENIED AS MOOT.

The parties have fourteen (14) days in which to file objections to this Report and Recommendation pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.


Dated: April 17, 2012                            _____/S/_____
                                                 Paul W. Grimm
                                                 United States Magistrate Judge

lyb